OPINION. Rice, Judge: Petitioner concedes that the entire amount which he received pursuant to the settlement of his suit against Tennessee and certain of its directors was taxable income. He contends, however, that he is entitled to report such amount under the provisions of section 107 (a) of the 1939 Code. The respondent argues that the petitioner has failed to bring himself 'within the specific requirements of that section. It is apparent from our findings of fact herein that the petitioner has so failed. The essential fact which the petitioner has not established is that stock having a fair market value of $15,235.42, received by him in 1946, was compensation for personal services. To the contrary, the record shows that the stock received was reimbursement for expenses incurred in prosecuting the derivative stockholder’s suit and advances against expenses which petitioner expected to incur in implementing the natural gas purchase contract. The proposed settlement offered by petitioner provided for the receipt of Tennessee stock “in further reimbursement of all expenses thus far incurred by me in the litigation entitled Dali, etc. vs. Wagner, et al., and to be incurred by me in connection with the procuring of the quantities of natural gas for your Company * * Petitioner’s counsel stated at the hearing that the payment in question was “to reimburse him [petitioner] for his disbursements that he had incurred, which amounted to approximately $10,000, up to that time, in the prosecution of these questions, in and out of court, and a $25,000 payment to me as counsel.” Counsel further stated, “[This payment], or whatever one chooses to call it, was not a recovery of a judgment. If one wants to view it as compensation, one may do so. If one wants to view it as an advance against his disbursements to implement the gas contract, one can do so. If one wants to view it as part reimbursement of the cost of prosecuting the operation, the investigation and litigation of the common stock structure, one can do so.” We do not agree that the payment received can be optionally viewed under the above-described categories. Clearly the payment was, in fact, a reimbursement for past expenses and an advance against future expenses. It, therefore, does not qualify under the specific requirements of section 107 (a). To avail himself of the benefits of that section, a taxpayer must bring himself within the letter of the congressional grant; that, the petitioner here has not done. See Guy c. Myers, 11 T. C. 447 (1948). The only cases which he cites in support of his position — E. A. Terrell, 14 T. C. 572 (1950), and Love v. United States, 85 F. Supp. 62 (E. D., Mo., 1949) — are very obviously distinguishable on their facts from those before us here. In the Terrell case, a corporation’s president successfully prosecuted a claim over a period of several years in behalf of the corporation against a third party. The corporation’s directors formally resolved that his regular compensation as president was inadequate for the additional services rendered and voted him $29,996.67 of additional compensation for his services in connection with the claim. We held that such additional compensation was taxable under section 107 (a). In the Love case, the taxpayer performed services in behalf of a corporation in prosecuting extended litigation against the United States, in addition to other services which he performed for the corporation. He received compensation for his personal services in connection with the litigation, and the court allowed that income to be reported under section 107 (a). The essential element present in those cases, but absent here, is that the amounts received by the taxpayers there were for personal services rendered — not as reimbursement for expenses incurred or advances against future expenses to be incurred as was the payment to petitioner here. The respondent also argued that the period over which the petitioner claims to have rendered alleged services was not 36 months or more as specifically required by the Code. Our conclusion that the amount received by petitioner was not for personal services makes it unnecessary for us to decide that question. However, if we are wrong in that conclusion and the services rendered by the petitioner were personal services for which the payment was received, he has failed to show that such services extended over the required statutory period. Petitioner’s testimony as to his concern that there were irregularities in the issuance of Tennessee’s common stock prior to September 1943, scarcely could be held to constitute the commencement of “personal services” within the meaning of the statute. He was Tennessee’s president, a director, and a large stockholder and should have been concerned if his fears were well founded. But what he has not shown is that he, personally, undertook to do anything actively to correct such irregularities as he imagined existed. He also testified that during his military service in Washington, D. C., he assisted, as time would permit, in carrying on the work of the company. But it is clear from the record that such efforts as he expended were to assist in securing a certificate of public convenience and necessity for Tennessee from the Federal Power Commission. The only active effort petitioner made, which was directly related to the payment he received in 1946, commenced after September 20, 1943. The exact dates on which he received the shares of stock were not shown. The suit was settled on January 15, 1946, however, which ended the period over which any such services could have been rendered ; thus the span of time concerned is less than the 3 years required' by the Code. Decision will be entered for the respondent.